IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
UNITED STATES OF AMERICA,     )
                              )
    Plaintiff,                )
                              )
    v.                        )    CIVIL ACTION NO.
                              )      3:11cv937-MHT
                              )          (WO)
ONE PARCEL OF PROPERTY        )
LOCATED AT 9607 LEE ROAD      )
72, WAVERLY, LEE COUNTY,      )
ALABAMA, WITH ALL             )
APPURTENANCES AND             )
IMPROVEMENTS THEREON,         )
(Tax Map No.                  )
43-06-07-26-0-000-026.002),   )
                              )
and                           )
                              )
ONE PARCEL OF PROPERTY        )
LOCATED AT 8895 LEE ROAD      )
72, WAVERLY, LEE COUNTY,      )
ALABAMA, WITH ALL             )
APPURTENANCES AND             )
IMPROVEMENTS THEREON,         )
(Tax Map No.                  )
43-06-07-25-0-000-014.001),   )
                              )
    Defendants.               )
```

OPINION AND ORDER

   The cause is before the court on the questions of claimant Broderick Zellers's mental competency and the

necessity of appointing a guardian ad litem.  Based on all the evidence, including that presented at the hearing held on April 3, 2013, the court concludes that Zellers has the current capacity to proceed in this litigation.  However, because the court also finds a substantial risk that Zellers will decompensate during the length of this litigation, the court will appoint a 'monitor' for the narrow purposes of observing Zellers throughout the life of this forfeiture action and of reporting to the court any marked changes in his mental health.

## I. BACKGROUND

Plaintiff United States of America filed for civil forfeiture of certain parcels of property in Lee County, Alabama.  Zellers and three of his siblings filed a claim to the parcel of property located at 8895 Lee Road 72.  He and his siblings are represented by Attorney Bruce Maddox.  The government moved for summary judgment, and

the claimants responded with a brief opposing summary judgment.

The opposition brief and accompanying exhibits painted a picture of Zellers's mental health that caused this court to question his legal competency. For example, his sister Yolanda Zellers stated that his "ability to comprehend legal issues is limited to non-existent." Yolanda Zellers Aff. (Doc. No. 56). Ex. 6. Letters from Zellers's mental-health treatment providers show that he had been in treatment for schizophrenia on and off for the past 25 years and that he had been hospitalized "for an acute decompensation with depression" within the past year. Letter from Brenda Moon (Doc. No. 56), Ex. 8. In light of this evidence and the court's concerns, the parties agreed that a psychological evaluation was needed. By agreement of the parties, the court appointed Dr. Karl Kirkland to perform the evaluation and prepare a report of his findings. <u>United States v. One Parcel Property Located at 9607 Lee</u>

Road 72, Waverly, Lee County, Ala., \_\_\_\_ F.Supp.2d \_\_\_\_, \_\_\_\_, 2012 WL 5877972, at *2 (M.D. Ala. 2012) (Thompson, J.).

Dr. Kirkland met with Zellers on January 11, 2013. He administered a clinical and forensic interview, a mental-status exam, an achievement test, and a test to inventory Zellers's legal knowledge.  Zellers reported that he joined the military at age 18 and was assigned to work in the boiler room of large ships; that his shipmates slipped him the hallucinogenic drug LSD during this time without his knowledge; that he began experiencing "psychedelic trips" while in the boiler room of these large ships and was hospitalized psychiatrically as a result; and that he was first diagnosed with paranoid schizophrenia at this time.   Dr. Kirkland diagnosed Zellers with paranoid schizophrenia, a history of cocaine abuse (in remission), and Post Traumatic Stress Disorder (PTSD).  He explained that, when Zellers is compliant with the taking of the medicines he has been

4

prescribed, Zellers has sufficient control over these mental illnesses such that he can understand and participate in legal proceedings.  Dr. Kirkland noted, however, that the day before he met with Zellers, Zellers was released from a two-week psychiatric hospitalization.  The fact that Zellers was clear and oriented at the time of the evaluation was thus a result of fortuitous timing.  Dr. Kirkland found that Zellers's competency "is very unpredictable and unstable."  Eval. (Doc. No. 98) at 8.  He noted that Zellers "has been hospitalized approximately once a quarter for four times per year in the [Veteran's Administration] system on average for a 2-3 week hospitalization."  Id. at 6.  He therefore concluded that any evaluation of Zellers's competency must "occur contemporaneous with an actual hearing on the day of a hearing."  Id. at 8.

The court convened a telephone conference with both parties to discuss Dr. Kirkland's report.  All parties agreed the report left the question of Zellers's

competency unresolved.  The court expressed concern that having Dr. Kirkland evaluate Zellers's competency on the day of trial (and before any pretrial hearing) would not satisfactorily protect Zellers's interests in this case.  Though such an approach might be sufficient if the competency issue were limited to a specific point in time, here Zellers must be competent to voice his interests and communicate his decisions throughout the life of the forfeiture action, not just at trial or at a hearing but out of court and in private conferences with this attorney as well.  The parties agreed to hold a competency hearing, at which Dr. Kirkland could explain his findings more fully.

At the hearing, Dr. Kirkland explained that he could not be sure whether Zellers would remain competent throughout the course of the litigation.  He further explained that Zellers's competency hinges on whether he is properly taking his medicines.  Whether he is properly taking his medicines in turn depends on environmental

stressors. It also requires exactitude and responsibility on the part of Zellers, as he takes approximately 12 different medicines, which are needed to maintain a delicate chemical balancing. Dr. Kirkland also testified that manifestations of Zellers's mental illness could cause him to stop taking his medicines.

Dr. Kirkland outlined a clear pattern that has taken shape over the past 25-to-30 years: once every three-to-four months, Zellers gradually stops taking his medication, his mental health deteriorates, his paranoid schizophrenia ramps up, he is hospitalized for two-to-three weeks, his condition stabilizes, and he returns home. He noted that Zellers's family members have learned to identify the signs of this decompensation when it begins: agitation, insomnia, withdrawn behavior, auditory-commanding hallucinations, and paranoia. Dr. Kirkland opined that someone appointed to monitor Zellers's mental health could also detect these outward

manifestations of his mental illness and that this person would not need to be a health professional.

## II. DISCUSSION

In a previous order, this court explained that the civil legal-competency determination depends on whether "Zellers is mentally impaired to the extent that he is unable to understand the nature and effect of this litigation."  <u>United States v. One Parcel Property Located at 9607 Lee Road 72, Waverly, Lee County, Ala.</u>, ____ F.Supp.2d ____, ____, 2012 WL 5877972, at *2 (M.D. Ala. 2012) (Thompson, J.).

Dr. Kirkland found that Zellers was alert and oriented to his surroundings, both on the day of the evaluation and on the day of his competency hearing; he further found that Zellers has a basic understanding of the forfeiture action, its consequences, and his role as a claimant to the property that the government seeks. Based on Dr. Kirkland's report and testimony, the court

8

concludes that Zellers is not currently suffering from a mental disease such that he is unable to understand the nature and effect of this litigation.  As Zellers is currently competent to proceed in this litigation, it is important to safeguard Zellers's freedom to determine the course of the litigation as he sees fit.  Indeed, just as it would be impermissible, if Zellers were <u>incompetent</u>, to litigate his claim without appointing a guardian ad litem for him, it would be impermissible, if he were <u>competent</u>, to appoint a guardian ad litem for him and thus take away his right to direct this litigation as he sees fit.  Therefore, the court will not appoint a guardian ad litem at this time.

That decision, however, does not put the matter to rest. As Dr. Kirkland explained, Zellers's competency is unstable.  There have been many times throughout Zellers's life when he was not competent to participate in civil litigation, and it appears certain there will be more such times in the future.  Though Dr. Kirkland's

9

suggestion of having a mental-health professional evaluate Zellers immediately before trial and hearings is not fully satisfactory, the court accepts the basic suggestion that Zellers's competency must be monitored throughout the litigation. The risk that Zellers's mental health will backslide during the life of this case is too high to decide otherwise. As Dr. Kirkland found, Zellers is hospitalized approximately four times a year, once every three to four months. This pattern has been ongoing for the past 25-to-30 years, and there is no reason to expect it to cease with the onset of this case.

    The Federal Rules of Civil Procedure provide that a court "must appoint a guardian ad litem--<u>or issue another appropriate order</u>--to protect... [an] incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2) (emphasis added). This subsection gives the court "broad power to enter any order for the protection of the ... incompetent." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1570 (3d ed. 1998). After careful

consideration, the court has determined that the wisest course of action is to appoint a 'monitor' to observe Zellers's legal competency throughout this litigation.

The role of this monitor will be limited. The monitor will meet with Zellers at the earliest opportunity to learn Zellers's position as to the litigation and desired outcome. Following this initial meeting, the monitor will visit Zellers at least once a month to determine the status of Zellers's mental health. The monitor will speak with at least two of Zellers's immediate family members at least once a month to inquire whether they have observed any signs that Zellers is deteriorating. The monitor will confer on a frequent basis with Zellers's attorney to discuss whether the attorney has observed that Zeller's' mental health is declining. The monitor will attend all court proceedings. If the monitor finds any indication that Zellers is not taking his medication or that he is decompensating, the monitor shall file a status report

11

with the court so stating. If the court determines that Zellers has decompensated to the point of incompetency, the monitor may then take on the role of guardian ad litem. The monitor is not authorized to adopt this role unless and until there is a court finding that Zellers is not competent to proceed.

Zellers's attorney has offered to serve as monitor. While the court has no doubt that Zellers's attorney would fill this role to the best of his ability, it would not be appropriate for the attorney to wear both hats in this situation. If Zellers becomes incompetent during the course of this litigation, the monitor will be in the best position to take on the role of guardian ad litem. Because Zellers's attorney also represents three other claimants to this same parcel of property, whose best interests may conflict with Zellers, this would present a direct conflict that is best avoided.

Finally, because plaintiff United States of America has agreed to pay the fees and expenses of the monitor,

the court need not address how such fees and expenses would be paid in the absence of such an agreement.

***

Accordingly, it is ORDERED as follows:

(1) The court appoints Honorable Karen Mastin Laneaux, Law Office of Sandra Lewis, PC, P. O. Box 686, Montgomery, Alabama 36101-0686, to monitor the legal competency of claimant Broderick Zellers.

(2) The duties of the monitor include, but are not limited, to the following: (a) the monitor shall meet with claimant Zellers immediately to discern his desired outcome for this litigation (b), following this initial meeting, the monitor shall visit claimant Zellers at least once a month to observe his mental health; (c) the monitor shall speak with at least two members of claimant Zellers's immediate family at least once a month to ask if family members have observed that his mental health is declining; (d) the monitor shall confer on a frequent basis with Zellers's attorney to discuss whether the

attorney has observed that Zeller's' mental health is declining; (e) the monitor shall attend all court proceedings; and (f), if at any time the monitor finds that Zellers's mental health is deteriorating, the monitor shall file a status report with the court so stating.

    (3) The monitor is not to adopt the role of guardian ad litem.

    (4) Plaintiff United States of America shall pay the fees and expenses of the monitor.  The monitor shall contact forthwith counsel for plaintiff United States of America to make formal arrangements for the payment of the monitor's fees and expenses.

    DONE, this the 26th day of April, 2013.

                                    /s/ Myron H. Thompson
                                 UNITED STATES DISTRICT JUDGE